## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**WILLIE MURRY MUHUMMAD**
**ADC #97878**                                                             **PLAINTIFF**

**V.**                       **CASE NO. 5:13-CV-00361 DPM/BD**

**WHITTY EVANS, et al.**                                                    **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.      Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge D.P. Marshall Jr.  Any party may file written objections to this

Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

Your objections must be received in the office of the United States District Court

Clerk within fourteen (14) days of this Recommendation.  If no objections are filed, Judge

Marshall can adopt this Recommendation without independently reviewing the record.

By not objecting, you may also waive any right to appeal questions of fact.

**II.     Introduction:**

Plaintiff Willie Murry Muhummad, an Arkansas Department of Correction

("ADC") inmate, filed this case *pro se* under 42 U.S.C. § 1983.  (Docket entry #2)  In his

amended complaint (#8), Mr. Muhummad alleges that all Defendants acted with deliberate indifference to his medical needs, and that Defendants Evans and Meinzer retaliated against him for filing a claim with the Arkansas Claims Commission.

Defendants have now moved for summary judgment on all of Mr. Muhummad's claims. (#68, #71, #74)  Mr. Muhummad has responded to the motions. (#78, #80, #82, #85)  Defendants Culelager, Evans, Hoskins, and Meinzer ("ADC Defendants") have replied to Mr. Muhummad's response. (#84)

For reasons explained below, the Court recommends the Defendants' motions for summary judgment (#68, #71, #74) be GRANTED.  Mr. Muhummad's claims against Defendants Freeman and Olson should be DISMISSED, without prejudice, based on Mr. Muhummad's failure to fully exhaust his administrative remedies.  Claims against the ADC Defendants should be DISMISSED, with prejudice.

## III.   Discussion:

A.     Summary Judgment Standard

Summary judgment is granted to a party when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  A moving party must first present evidence showing that there is no genuine dispute as to any material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party meets that burden,

the nonmoving party must come forward with evidence showing that there is a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not submit proof establishing a necessary element of a claim, the moving party is entitled to judgment on that claim. *Celotex Corp*., 447 U.S. at 322-23.

B.    Exhaustion

Defendants Freeman and Olson contend that Mr. Muhummad failed to fully exhaust grievances against them. The Court must address this issue prior to addressing the merits of Mr. Muhummad's deliberate-indifference claim against these Defendants. See *Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378, (8th Cir. Aug. 19, 2010) (unpublished opinion) (holding that the trial court erred when it dismissed the case, with prejudice, on the merits without first considering the exhaustion issue, and dismissing without prejudice).

It is settled law that prisoners must exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). If a

3

claim is not fully exhausted by the time a lawsuit is filed, the Court must dismiss it, without prejudice. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

Prisoners can be excused from exhausting administrative remedies, but only when correction officials have prevented them from using grievance procedures or when the officials themselves have not complied with the administrative procedures. *Miller*, 247 F.3d at 740; *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001).   That is not the case here.

Mr. Muhummad claims Defendants Freeman and Olson were deliberately indifferent to his serious medical needs when Defendant Freeman failed to properly close the curtain in his examination room and Defendant Olson failed to properly examine his hernia and prescribe stronger pain medication.  (#8, #69-3 at p. 6)

In support of their motions for summary judgment, Defendants Freeman and Olson point to the ADC grievance policy as well as the only grievance Mr. Freeman filed relating to the deliberate-indifference claim.  (#69-1, #69-2, #69-3 at p. 14, #76 at pp. 13-15)   In grievance number VSM13-02613, Mr. Muhummad alleges that Defendant Freeman refused to close the examination room curtain and Defendant Olson failed to properly examine his hernia.  (#69-2 at p. 3, #76 at p. 15)   The grievance was rejected without addressing the merits at the unit level because it was untimely.  (#69-2 at p. 2, #76 at p. 14)

Mr. Muhummad appealed the unit level decision.  In her response to the appeal, then-Deputy Director Wendy Kelley addressed the timeliness issue and affirmed the denial of the grievance as untimely.  (#69-2 at p. 1, #76 at p. 13)  Because the merits of Mr. Muhummad's grievances were not addressed, he did not fully exhaust his administrative remedies regarding this claim. (#69-2, #76 at pp. 13-15)

Mr. Muhummad has failed to come forward with any evidence to prove either that he did fully exhaust his administrative remedies regarding this claim or that he was prevented from exhausting this claim in a timely manner.  Mr. Muhummad alleges that ADC officials did not respond to the grievance in a timely manner, but this conduct is insufficient to establish that ADC officials prevented him from filing a timely grievance. The ADC grievance process permitted Mr. Muhummad to move forward with the grievance process even when he did not receive a timely response to his grievance.  The policy provides:

> If the designated problem-solver . . . has failed to contact the inmate and attempt resolution of the complaint or failed to return Step One (the grievance) within the designated three working days, the inmate may proceed to Step 2, the formal grievance without the completion on Step 1. In that instance, Step 2, the formal grievance, must be filed no later than six (6) working days from the submission of the Unit Level Grievance Form pursuant to Step 1: this allows three (3) working days to wait for a response to Step 1, and three (3) working days to initiate Step 2.  (These are not three (3) additional days. . . )

(# 69-1, pp. 7-8, ¶11) Mr. Muhummad had until July 15, 2013 to appeal to Step 2.  He did not submit his appeal until July 17, 2013.  (#69-2 at p. 3)

The question of whether a prisoner has properly exhausted administrative remedies turns on the specifics of the prison policy, not federal law. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Here, Mr. Muhummad failed to fully exhaust his grievance against Defendants Freeman and Olson under the ADC grievance policy, and he has not come forward with any evidence indicating that he was prevented from fully exhausting his grievance. Accordingly, Mr. Muhummad's claims against Defendants Freeman and Olson should be dismissed, without prejudice, for failure to exhaust.

C.     Deliberate Indifference

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove that a prison official failed to provide adequate medical treatment, Mr. Muhummad must show that he suffered from an objectively serious medical need and that Defendants "knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). This showing requires a mental state "akin to criminal recklessness." *Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Stated another way, Mr. Muhummad must show that the Defendants' conduct was "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997). Moreover, a deliberate indifference claim must be brought against the individual directly

responsible for an inmate's medical care.  *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997).

Mr. Muhummad suffered from a hernia that eventually required surgery in October of  2013.  (#69-3 at pp. 8-9)  At his deposition, he explained that he was scheduled to appear before the classification committee on June 26, 2013, to ask the committee for a reduction in the punitive isolation time he had accrued.  (#8, #73-1 at pp. 11-12, #73-4 at p. 4)  Defendant Evans was assigned to the escort team that day.  She told Mr. Muhummad to get ready and she would escort him to the classification committee.  (#73-1 at pp. 5-6)   After telling Mr. Muhummad she would escort him, Defendant Evans left the cell block.  (#73-1 at p. 8)  Another officer approached Mr. Muhummad and offered to escort him to the classification hearing, but Mr. Muhummad told the officer, "no," because he believed that Defendant Evans was going to return to escort him.  (#73-1 at p. 8)

When Defendant Culelager came to Mr. Muhummad's cell block, Mr. Muhummad asked to be escorted to the classification hearing.  (*Id*.)  Defendant Culelager told Mr. Muhummad he thought Mr. Muhummad had refused.  When Mr. Muhummad told him he had not refused, Defendant Culelager obtained two other officers to come and escort Mr. Muhummad to the classification hearing.  (#73-1 at pp. 8-13)

Defendant Meinzer was a member of the classification committee that day.  (*Id*. at p. 14)  Mr. Muhummad asked Defendant Meinzer why he had allowed officer Evans to

refuse to escort him to classification and asked him "[w]hy you trippin?"  (*Id*. at pp. 8, 16)
Mr. Muhummad testified that Defendant Meinzer told the officers to "get him out of
here," and Defendant Culelager said "put him on behavior control."  (*Id*. at p. 16)   Mr.
Muhummad was taken from the classification committee straight to isolation where
Defendant Culelager placed him on behavior control.  (*Id*. at pp. 22, 24, #73-9 at pp. 1-3)

     Defendant Hoskins came to Mr. Muhummad's cell with his property to inventory it
in front of him.  (#73-1 at pp. 22, 24)  When Mr. Muhummad asked for his pain
medication [ibuprofen] for his hernia, Defendant Hoskins told him he could not have it.
According to Mr. Muhummad, Defendant Hoskins said, "You can't get nothing but a pair
of boxers and no shower shoes. . . .  You can't get nothing period, but this and a blanket."
(*Id*. at p. 23)

     Mr. Muhummad was taken to see the doctor two days later on June 28, 2013.  (*Id*.
at pp. 26, 28-29)  Mr. Muhummad was removed from behavior control status on June 29,
2013.  (#73-9 at p. 3)

     Mr. Muhummad has failed to provide any evidence that the ADC Defendants were
directly responsible for his medical care.  None of the ADC Defendants are medical care
providers, and none of the ADC Defendants can prescribe medication.

     At his deposition, Mr. Muhummad testified that he had never discussed his hernia
condition with Defendant Evans.  (#73-1 at p. 34)  Further, he had never spoken to
Defendants Meinzer or Culelager about his doctor's visit or medication.  (*Id*. at pp. 27,

8

38-40)  Mr. Muhummad suggests that it was Mr. Meinzer's policy not to allow anyone on behavior control to go to the infirmary.  (#73-1 at pp. 38-39)  But Mr. Muhummad has not provided any documentation of such a policy and testified that he had not heard Defendant Meinzer tell any of the officers not to escort him to the doctor.  (*Id*. at 27, 38-40)  In fact, Mr. Muhummad was escorted to his doctor's appointment on June 28, 2013, while he was still on behavior control status.  (*Id*.)

Mr. Muhummad complains that Defendant Hoskins was deliberately indifferent because he inventoried his ibuprofen, leaving him without pain medication for three days.  (*Id*. at pp. 44, 46-47)   Any delay in providing Mr. Muhummad's pain medication was, at most, negligent and falls short of establishing a constitutional claim.  *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013)(deliberate indifference standard requires showing more than gross negligence).

Accordingly, based on the undisputed evidence presented, the Court concludes that the ADC Defendants are entitled to judgment as a matter of law on Mr. Muhummad's deliberate-indifference claims.  Mr. Muhummad has failed to offer any proof that the ADC Defendants knew of, but deliberately disregarded, his serious medical needs.  See *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 884-85 (8th Cir. 2009)(explaining again that deliberate-indifference claims require a showing that a defendant possessed a state of mind "amounting to criminal recklessness").

D.    Retaliation

9

Mr. Muhummad also claims that Defendants Evans and Meinzer retaliated against him for filing a case with the claims commission.  To establish a retaliation claim, Mr. Muhummad must present evidence that:  he engaged in constitutionally protected activity; Defendants Evans and Meinzer took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and retaliation was the actual motivating factor for the adverse action.  *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).   "Actual motivating factor" means that the adverse action would not have occurred "but for a retaliatory motive." *Lewis*, 486 F.3d at 1029; *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009).

Furthermore, a prisoner cannot prevail on a retaliation claim if adverse action was motivated by both a legitimate reason and an improper retaliatory reason.  *Id.*; *Webb v. Hedrick*, Case No. 09-2896, 2010 WL 4366438, *1 (8th Cir. Nov. 5, 2010)(unpublished opinion) (explaining that a prisoner cannot prevail "if retaliation was just one factor" in the defendants' decision); *Ponchik v. Bogan*, 929 F.3d 419, 420 (8th Cir. 1991)(rejecting a retaliation claim when retaliation was only one of the factors leading to the inmate's transfer).

1.      Defendant Evans

In his amended complaint, Mr. Muhummad claims he was placed on behavior control in retaliation for bringing a claims commission case.  (#8 at p. 1)  At his deposition, Mr. Muhummad stated that he based his retaliation claim against Defendant

Evans on his belief that Defendant Evans "was a part of me being placed in isolation" because she told Defendant Meinzer that he had "refused [to be escorted to] classification."  (#73-1 at p. 37)

Mr. Muhummad admitted, however, that he had never talked to Defendant Evans about his claims commission case and had never heard Defendant Evans and Defendant Meinzer talk about the claims commission case.  (*Id*. at p. 36-37)   Defendant Evans was not involved in the incident giving rise to the claims commission case and was not mentioned in the complaint.  (#73-2)

Furthermore, Mr. Muhummad has not come forward with any evidence that the claims commission case actually motivated Defendant Evans to take any action against him.  Accordingly, Defendant Evans's motion for summary judgment on Mr. Muhummad's retaliation claim should be granted.

2.     Defendant Meinzer

Mr. Muhummad claims that Defendant Meinzer placed him in isolation on June 26, 2013, in retaliation for filing a case with the claims commission on August 29, 2012.  (*Id*. at 21, 41)  Mr. Muhummad brought the claims commission case against the ADC based on an August, 2011 incident where three officers, none of whom are Defendants in this case, placed him in a restraint chair.  In the claims commission complaint, Mr. Muhummad alleged that Defendant Meinzer and James Gibson gave him an additional two hours in the restraint chair even though he was not behaving disruptively.  (#73-2 at

11

p. 1)  The claims commission unanimously dismissed the case on August 29, 2012.  (*Id*. at

p. 2)

Assuming Mr. Muhummad's filing of the claims commission case was  protected

activity, Mr. Muhummad has not come forward with sufficient facts to establish a

retaliation claim against Defendant Meinzer.

First, Mr. Muhummad has not established that Defendant Meinzer took adverse

action against him in this instance.  Mr. Muhummad testified at his deposition that after

he and Defendant Meinzer exchanged words at the hearing, Defendant Meinzer instructed

officers to take him out of the classification hearing and place him "in isolation."  (#73-1

at p. 41)  At that time, Defendant Meinzer was already in punitive isolation.  (#73-4 at p.

4)  Defendant Culelager, not Defendant Meinzer, instructed officers to place Mr.

Muhummad on behavior control and completed the necessary paperwork.  (#73-7 at p. 1,

#73-9 at pp. 1-3)

Second, Mr. Muhummad has not come forward with evidence to establish that

retaliation was the actual motivating factor for Defendant Meizner's actions at the

classification hearing.  It is questionable whether Defendant Meizner was aware of the

claims commission case because the ADC, not Defendant Meinzer, was the respondent in

the case.  (#73-2 at p. 1)  At his deposition, Mr. Muhummad stated that he had talked with

Defendant Meizner about the claims commission case before he filed it in August of

2012, but that he had not had a conversation with Mr. Meizner about the case after he

12

filed it.  (#73-1 at pp. 19-22)  At his deposition, Mr. Muhummad stated he brought the claims commission case up with Defendant Meizner at the classification hearing by asking him if he was "trippin on" the case, and Defendant Meizner responded "no."  (*Id.* at pp. 16)

Mr. Muhummad has not come forward with any evidence to support his assertion that Defendant Meinzer was aware he was named in the claims commission case[1] or that the case motivated Defendant Meizner to order him removed from the classification hearing.  (#73-1 at p. 21, 41-42)

Finally, there is a significant lapse of time between Mr. Muhummad's filing his complaint with the Arkansas Claims Commission and his placement on behavior control. See *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007); *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)("The lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of a casual connection.").  The claims commission case was filed in August, 2012.  The incident giving rise to this lawsuit occurred 10 months after the case was filed.

---

[1]At his deposition, Mr. Muhummad testified that "once before" Defendant Meinzer "came through there and said, 'You still filing paperwork on me, ain't ya?'" (#73-1 at p. 41)  Mr. Muhummad could not remember when the alleged statement was made and offered no explanation for his belief the statement was about the claims commission case. (#73-1 at pp. 41-42)

Based on these facts, Mr. Muhummad has not established that the claims commission case was a motivating factor in Defendant Meinzer's order to remove Mr. Muhummad from the classification committee hearing.

**IV.  Conclusion:**

The Court recommends the Defendants' motions for summary judgment (#68, #71, #74) be GRANTED.  Mr. Muhummad's claims against Defendants Freeman and Olson should be DISMISSED, without prejudice, based on Mr. Muhummad's failure to exhaust administrative remedies.  The Court further recommends that Mr. Muhummad's claims against Defendants Maurice Culelager, Whitty Evans, Michael Hoskins, and Curtis Meinzer be DISMISSED, with prejudice.

DATED this 25th day of March, 2015.

_____

UNITED STATES MAGISTRATE JUDGE